Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THOMAS COLLINS, | Case No: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| VERSO CORPORATION, ROBERT K. BECKLER, MARVIN COOPER, JEFFREY E. KIRT, RANDY J. NEBEL, and NANCY M. TAYLOR, | |
| Defendants. | |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Thomas Collins ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.  This is an action against Verso Corporation ("Verso" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in

1

connection with the proposed acquisition (the "Proposed Transaction") of Verso by BillerudKorsnäs AB ("BillerudKorsnäs").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, and the alleged misstatements entered and the subsequent damages occurred in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Verso common stock.

7. Defendant Verso produces and sells coated papers in North America. The Company is incorporated in Delaware. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "VRS."

8. Defendant Robert K. Beckler ("Beckler") is a director of the Company.

9. Defendant Marvin Cooper ("Cooper") is a director of the Company.

10. Defendant Jeffrey E. Kirt ("Kirt") is Chairman of the Board of the Company.

11. Defendant Randy J. Nebel ("Nebel") is President, Chief Executive Officer, and a director of the Company.

12. Defendant Nancy M. Taylor ("Taylor") is a director of the Company.

13. Defendants Beckler, Cooper, Kirt, Nebel, and Taylor are collectively referred to herein as the "Individual Defendants."

14. Defendants Verso and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

15. On December 19, 2021, Verso announced that it had entered into a definitive merger agreement under which BillerudKorsnäs would acquire all of the outstanding shares of Verso for $27.00 per share in cash. The press release announcing the Proposed Transaction states, in pertinent part:

**Verso Corporation to be Acquired by BillerudKorsnäs AB for $27 Per Share in Cash, or Approximately $825 Million**

Creates one of the largest providers of virgin fiber paper and packaging with a cost and quality advantage

NEWS PROVIDED BY
**Verso Corporation**
Dec 19, 2021, 18:15 ET

MIAMISBURG, Ohio, Dec. 19, 2021 /PRNewswire/ -- Verso Corporation (NYSE: VRS) ("Verso") today announced that it has entered into a definitive merger agreement under which BillerudKorsnäs AB ("BillerudKorsnäs") will acquire all of the outstanding shares of Verso for a purchase price of $27 per share in cash, or approximately $825 million[1]. Verso's Board of Directors, acting upon the recommendation of a special committee of Verso's Board, has unanimously

3

approved and resolved to recommend approval of the merger by Verso's shareholders. The transaction is expected to close in the second quarter of 2022.

*   *   *

**Additional Transaction Details**
The acquisition will be effected pursuant to a definitive merger agreement under which Verso will merge with a wholly-owned subsidiary of BillerudKorsnäs. The acquisition will be primarily financed by BillerudKorsnäs through increased debt and operating cash flow. Closing of the transaction is not subject to any financing condition.

A special meeting of Verso's shareholders is expected to be convened following the mailing to Verso's shareholders of a proxy statement for the transaction. The transaction is expected to close during the second quarter of 2022, subject to the approval of Verso's shareholders, as well as receipt of regulatory approvals and satisfaction of other customary closing conditions. Regulatory approvals include U.S. antitrust approval as well as approval from relevant state and federal energy regulatory authorities in the U.S.

**Advisors**
Rothschild & Co serves as exclusive financial advisor and Kirkland & Ellis LLP serves as legal counsel to Verso. BofA Securities serves as exclusive financial advisor, Skadden, Arps, Slate, Meagher & Flom LLP serves as U.S. legal counsel and Cederquist serves as Swedish legal counsel to BillerudKorsnäs.

**About Verso Corporation**
Verso Corporation is a leading American owned and operated producer of graphic, specialty and packaging paper and market pulp, with a long-standing reputation for quality and reliability. Verso's graphic paper products are designed primarily for commercial printing, advertising and marketing applications, including direct mail, catalogs, corporate collateral, books and magazines. Verso's specialty paper products include release liner papers and label face stock for pressure sensitive, glue-applied and laminate applications. Verso produces packaging paper used in higher-end packaging and printing applications such as greeting cards, book covers, folders, labels and point-of-purchase displays. Verso also makes market pulp used in printing, writing, specialty and packaging papers, facial and toilet tissue, and paper towels. For more information, visit us online at versoco.com.

**About BillerudKorsnäs**
BillerudKorsnäs provides packaging materials and solutions that challenge conventional packaging for a sustainable future. We are a world leading provider of primary fiber based packaging materials and have customers in over 100 countries. The company has seven production units in Sweden and Finland, and about 4,400 employees in over 13 countries. BillerudKorsnäs has an annual

turnover of approximately SEK 24 billion and is listed on Nasdaq Stockholm. www.billerudkorsnas.com.

16.     On February 8, 2022, Defendants caused to be filed with the SEC a Definitive Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

### B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions

17.     The Proxy Statement, which recommends that Verso shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Verso's financial projections; (ii) the financial analyses performed by Verso's financial advisor, Rothschild & Co US Inc. ("Rothschild"), in connection with its fairness opinion; and (iii) potential conflicts of interest involving Rothschild.

18.     The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Recommendation of the Board of Directors and Reasons for the Merger; (ii) Financial Forecasts; and (iii) Opinion of Rothschild & Co US Inc.

19.     Unless and until the material misstatements and omissions (referenced below) are remedied before the March 11, 2022 shareholder vote on the Proposed Transaction, Verso shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

#### 1. Material Omissions Concerning Verso's Financial Projections

20.     The Proxy Statement omits material information concerning Verso's financial projections.

21.     With respect to Verso's financial projections, the Proxy Statement fails to disclose:

5

(1) all line items underlying the projections; (2) Verso's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

22.     The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of Verso and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

23.     When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Feb. 16, 2022) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

24. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Rothschild's Analyses

25. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Rothschild.

26. With respect to Rothschild's "*Selected Public Company Analysis*" and "*Selected Precedent Transactions Analysis*," the Proxy Statement fails to disclose the individual multiples and financial metrics of each company and transaction Rothschild observed in its analyses.

27. The Proxy Statement fails to disclose the following concerning Rothschild's "*Discounted Cash Flow Analysis*": (1) the unlevered, after-tax free cash flows, including pension cash contributions, that Verso was forecasted to generate for the three months ended December 31, 2021 through the end of fiscal year 2026, including all underlying line items; (2) the terminal values of Verso; (3) the individual inputs and assumptions underlying the perpetuity growth rates and discount rates used in the analysis; (4) the amount of Verso's net debt as of September 30, 2021; and (5) the number of fully diluted outstanding shares of Verso's common stock.

28. The valuation methods, underlying assumptions, and key inputs used by Rothschild in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of Rothschild's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses.

29. Without the information described above, the Company's shareholders are unable to fully understand Rothschild's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Rothschild

30. The Proxy Statement omits material information concerning potential conflicts of interest involving Rothschild.

31. The Proxy Statement fails to disclose the timing and nature of all the past services Rothschild and/or its affiliates provided Verso, BillerudKorsnäs, and/or their affiliates, including the amount of compensation Rothschild received or expects to receive for providing each service within the past two years of the date of its fairness opinion.

32. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

33. The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

34. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

35. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of

the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

36. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

37. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

38. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

39. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

### COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

40. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

41. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy

Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

42. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

43. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

44. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

45. By virtue of the foregoing, the Individual Defendants have violated Section 20(a)

of the Exchange Act.

46. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

11

Dated: February 16, 2022  Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
       zhalper@halpersadeh.com

*Counsel for Plaintiff*